UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INDUSTRY PENSION FUNDS, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 13 C 5868 |
| HANNAH BROTHERS, an Illinois general partnership, DONALD C. HANNAH, an individual, FULL CIRCLE GROUP, INC., an Illinois limited liability company, FULL CIRCLE SHIPYARD, LLC, an Illinois limited liability company, FULL CIRCLE REPAIR, LLC, an Illinois limited liability company, FULL CIRCLE DEVELOPMENT, LLC, an Illinois limited liability company, and WATTS CHEMICAL, LLC, an Illinois limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion for summary judgment of Plaintiff Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Funds ("Plaintiff") pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") against Defendants Hannah Brothers ("Hannah Brothers") and Donald C. Hannah ("Donald") (collectively the "Hannah Defendants") as to Count I of the

Second Amended Complaint.[1] Plaintiff is not seeking an entry of summary judgment as to Count I against the remaining Defendants. For the following reasons, the Court grants summary judgment in favor of Plaintiff as to Count I.

## BACKGROUND

### I. Facts

The following facts are taken from the parties' respective statements, responses and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1 ("Rule 56.1"). We review each Rule 56.1 statement and disregard any argument, conclusion or assertion unsupported by the evidence in the record. The Court is mindful of its duty to weigh the credibility of the evidence presented by both parties and only relies on relevant, admissible evidence when ruling on the motion for summary judgment.

The Hannah Defendants did not provide a Rule 56.1(b)(3)(C) statement of additional facts for the Court to consider. They responded to Plaintiff's Rule 56.1(a)(3) statement, but failed to properly dispute many of the facts in accordance with Rule 56.1(b). For any disagreements with Plaintiff's facts, the Hannah Defendants were to make specific references to affidavits, parts of the record, and other supporting materials relied upon. *See* N.D. Ill. L.R. 56.1(b)(3)(B). Thus, for those responses that the Hannah Defendants failed to properly dispute, Plaintiff's factual allegations are deemed admitted to the extent they are supported by the record.

---

[1] In its motion for summary judgment, Plaintiff incorrectly states that it is seeking an entry of summary judgment as to Count I of the *First* Amended Complaint. However, Plaintiff rectifies this mistake in its reply brief.

*See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

Hannah Brothers was a general partnership, formed in 1952 by James A. Hannah Jr. ("James"), Donald and Margaret H. Douaire ("Margaret"). The original partnership agreement between James, Donald and Margaret stated that the "partnership shall engage in the business of . . . buying, selling, leasing and operating tugboats, barges, equipment related thereto, and other marine related equipment . . . ." The sole purpose of the partnership was to purchase barges and any other property for the exclusive use of the other companies owned by the Hannah family (the "Hannah Group"). From 1952 to 2006, Hannah Brothers would receive payments from the Hannah Group to lease tugboats owned by Hannah Brothers.

Plaintiff is a plan sponsor and authorized to administer the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund ("Pension Fund"). The Pension Fund is a multiemployer pension plan that receives contributions from numerous employers. A member of the Hannah Group, Hannah Maritime Company ("HMC") was a signatory to a collective bargaining agreement with the Automobile Mechanics' Local Union No. 701, which required it to submit contributions to the Pension Fund on behalf of its employees working in covered employment.

In 2006, the Hannah Group reorganized. During his deposition, William Piotrowski ("Piotrowski"), a certified public accountant ("CPA") for Hannah

Brothers, provided a flow chart showing the relationship between all the entities. For instance, James and Margaret sold their ownership interest in Hannah Brothers to New Era Hannah Corporation ("New Era"), with Donald as the 100% owner of New Era. After the reorganization, New Era owned 99% of Hannah Brothers with Donald retaining the remaining 1%. At the time of withdrawal, HMC was 100% owned by James A. Hannah, Inc., which also was 100% owned by Donald.

The Hannah Defendants dispute that New Era and Donald were general partners in Hannah Brothers at the time of the withdrawal. In his deposition, John Stoeckert ("Stoeckert"), another CPA and employee of Hannah Brothers, testified that Hannah Brothers was essentially a general partnership that owned assets that were to be leased to the principal operating entity of the Hannah Group (HMC). Hannah Brothers' only assets were vessels that were used exclusively by HMC under a bareboat charter arrangement. The Hannah Defendants contest that a bareboat charter is a lease because they claim Hannah Brothers did not even own a checking account. However, Stoeckert testified that a bareboat charter is the "equivalent" of a net lease and that HMC would pay Hannah Brothers for the use of the tugboats by using intercompany journal entries.

During the plan year beginning January 1, 2009 and ending December 31, 2009, HMC withdrew from the Pension Fund. The exact date of withdrawal is in question. Pursuant to the terms of the trust agreements, contributing employers that failed to submit payment of contributions by the due date, established by a relevant

collective bargaining agreement, were responsible for the payment of liquidated damages equal to 10% of the amount unpaid, plus any reasonable attorney's fees and costs of maintaining suit.

On January 25, 2010[2], Plaintiff's former counsel sent a notice and demand for withdrawal liability. The notice and demand also included a schedule for HMC to pay its liability. On September 14, 2010, Plaintiff filed suit against HMC in the United States District Court for the Northern District of Illinois and the court entered a default judgment in favor of Plaintiff and against HMC in the aggregate amount of $380,380.38. *See Trustees of the Automobile Mechanics Local No. 701 Union and Industry Pension Fund v. Hannah Maritime Corp.*, 10-CV-3702 (N.D. Ill. Sept. 14, 2010). Under the Pension Benefit Guaranty Corporation, the interest rate has been at 3.25% since 2009. Plaintiff is asking for $352,485.00 for withdrawal liability, $35,248.50 in liquidated damages, $50,080.33 for statutory interest at a rate of 3.25% from the date that the withdrawal liability was assessed, and $19,675.03 in attorney's fees and costs, totaling $457,488.86.

**II. Procedural History**

On June 12, 2014, Plaintiff filed its Second Amended Complaint against the Hannah Defendants for the withdrawal liability owed by HMC. The lawsuit is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Multiemployer Pension Plan

---

[2] Plaintiff incorrectly dates the letter as January 27, 2010 in its statement of facts.

Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1301-1461. Jurisdiction is proper under 29 U.S.C. § 1451(c). Venue is proper pursuant to 29 U.S.C. §§ 1132(e)(2) and 1451(d). On July 14, 2014, Plaintiff filed the instant motion seeking an entry of summary judgment as to Count I against the Hannah Defendants, jointly and severally, in the aggregate amount of $457,488.86 for the withdrawal liability of HMC, liquidated damages, statutory interest and attorney's fees.

**LEGAL STANDARD**

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on issues on which the movant bears the burden of proof at trial. *Id.* at 325. The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with documentary evidence. *Id.* A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary

judgment, a court construes all facts and draws all reasonable inferences in favor of the non-movant. *Id.* at 255.

## DISCUSSION

The MPPAA protects employees in multiemployer pension plans by requiring employers who withdraw from such plans to pay their share of "unfunded vested benefits." 29 U.S.C. § 1381(b)(1); *Chicago Truck Drivers v. El Paso Co.*, 525 F.3d 591, 595 (7th Cir. 2008). ERISA treats all trades or businesses under common control as a single employer. 29 U.S.C. § 1301(b)(1).

## I. Procedural Requirements

During the plan year beginning January 1, 2009 and ending December 31, 2009, HMC withdrew from the Pension Fund. As a result, the Pension Fund assessed withdrawal liability against HMC and obtained a judgment for $380,380.38 on September 14, 2010. The following are the specific procedural steps that a plan sponsor, like Plaintiff, must complete to assess withdrawal liability against a withdrawing employer: (i) notify the employer of the amount of the liability; (ii) notify the employer of the schedule for liability payments; and (iii) demand payment in accordance with the schedule. 29 U.S.C. § 1399(b)(1). "In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. . . if the

failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure. . ." 29 U.S.C. § 1399(c)(5)(A).

In the instant matter, the undisputed facts reveal that Plaintiff complied with these procedural steps when it filed suit for the outstanding liability of HMC.[3] Specifically, on January 25, 2010, Plaintiff sent a notice of default and demand for withdrawal liability to HMC and enclosed a payment schedule for HMC to pay its liability. On September 14, 2010, over sixty days after HMC received written notification from Plaintiff of its failure to pay the outstanding amount of withdrawal liability plus interest, Plaintiff filed suit and received a default judgment in its favor against HMC. This Court, therefore, finds that Plaintiff satisfied the procedural requirements to collect withdrawal liability from HMC and all other trades or businesses under common control if applicable.

## II. Existence of Hannah Brothers at the Time of Withdrawal

The Hannah Defendants aver that Plaintiff has failed to establish that Hannah Brothers, as an entity, even existed at the time of HMC's withdrawal, and thus, was a member of a controlled group with HMC. The Hannah Defendants contend that "there must be a standard for what constitutes withdrawal and that standard, when applied, should result in a date of withdrawal and not a year." The Hannah

---

[3] In their response to Plaintiff's statement of facts, the Hannah Defendants deny that the demand letter and schedule from January 25, 2010 were sent, but fail to cite to specific references to the affidavits, parts of the record, or other supporting materials that they relied upon when coming to these conclusions. The record reflects in Exhibit 5 of Plaintiff's motion for summary judgment that a letter was indeed sent to the Hannah Defendants on January 25, 2010 and thus, these facts are deemed admitted.

Defendants continue, stating that summary judgment should not be granted because Donald, himself, cannot establish when exactly Hannah Brothers' activities as a company ceased permanently, and Plaintiff failed to investigate this issue during discovery. Conversely, Plaintiff argues that the Hannah Defendants' ability to dispute specific matters (like the existence of Hannah Brothers at the time of the withdrawal) that relate to the determination of the employer's liability, assert any defenses, or contest the schedule of payments has expired.

Pursuant to 29 U.S.C. § 1399(b)(2)(A)(i), withdrawing employers may request a review of "any specific matter relating to the determination of the employer's liability and the schedule of payments." After receiving the request for review, "the plan sponsor shall notify the employer of (i) the plan sponsor's decision; (ii) the basis for the decision; and (iii) the reason for any change in the determination of the employer's liability or schedule of liability of payments." 29 U.S.C. § 1399(b)(2)(B). Next, the withdrawing employer must initiate arbitration to dispute the withdrawal liability assessment within sixty (60) days of receiving the plan sponsor's response to the request for review. 29 U.S.C. § 1401(a)(1)(A).

Under the MPPAA "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [29 U.S.C. §§ 1381-1399] shall be resolved through arbitration." 29 U.S.C. § 1401(a). § 4203 of the MPPAA defines when complete withdrawal occurs. 29 U.S.C. § 1383. If the withdrawing employer fails to initiate arbitration in

a timely manner, "the amounts demanded by the plan sponsor. . . shall be due and owing on the schedule set forth by the plan sponsor." 29 U.S.C. § 1401(b)(1). "The upshot is that either party may seek arbitration, but only the employer suffers a consequence for failing to do so." *Nat'l Shopmen Pension Fund. v. DISA Indus., Inc.*, 653 F.3d 573, (7th Cir. 2011). In the present case, HMC could have initiated arbitration pursuant to § 1401(a) to resolve the issue of whether Hannah Brothers existed at the time of withdrawal within the sixty days of receiving the January 25, 2010 demand. Arbitration was never initiated and Plaintiff subsequently filed a lawsuit in September 2010.

Whether Donald realized that Hannah Brothers could have been sued for HMC's withdrawal liability at that time is unknown. However, what is more conclusive to the Court is the fact that Hannah Defendants raise this issue in their responses to summary judgment without adequate support. In their defense, the Hannah Defendants only cite to the Fund's Administrator's certificate that they state omits "the date of withdrawal except to provide the year." This alleged omission, without any other evidence, is not nearly enough to create a genuine issue of material fact. Once Plaintiff bore its initial burden of showing that there was no genuine issue of material fact as to whether Hannah Brothers existed at the time of withdrawal through such evidence like the deposition testimony of Piotrowski and the reorganization flow chart cited to as an exhibit from Stoeckert's deposition, the burden then shifted to the Hannah Defendants to show through *specific* evidence that

a genuine issue of material fact was in fact present. Besides not initiating an arbitration in 2010 to address this issue, without providing documentary evidence and by solely resting on an alleged omission by Plaintiff, the Hannah Defendants failed to meet their burden of establishing through particular evidence that a triable issue of fact remained with respect to the timing issue. *See Celotex Corp.*, 477 U.S. at 325. Also, the Hannah Defendants' argument that Donald, himself, cannot even establish when Hannah Brothers ceased operations as a company and that Plaintiff should have pursued this more during discovery is unconvincing. Therefore, for the purposes of this motion, this Court holds that the record supports the contention that Hannah Brothers existed at the time of the withdrawal.

### III. The Hannah Defendants' Liability

Plaintiff contends that the Hannah Defendants are jointly and severally liable for the withdrawal liability of HMC. As part of this conclusion, Plaintiff claims that Hannah Brothers is a "trade or business" pursuant to the MPPAA. Under 29 U.S.C. § 1301(b)(1), "all employees of trades or businesses which are under common control shall be treated as employed by a single employer and all such trades and business as a single employer" for purposes of withdrawal liability. For the Court to hold the Hannah Defendants jointly and severally liable for HMC's withdrawal liability, Plaintiff must establish that: (i) the entities involved are "trades or businesses;" and (ii) they are under common control. *Cent. States, Se. & Sw. Pension Fund v. Personnel, Inc.*, 974 F.2d 789, 792 (7th Cir. 1992). Each trade or business

under common control is jointly and severally liable for any withdrawal liability of any other. *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 668 F.3d 873, 876 (7th Cir. 2011) (hereinafter "*SCOFBP II*"). Nowhere in their two-page response to the motion for summary judgment do the Hannah Defendants contest that they were under common control with HMC or provide the Court with any supportive case law. Nevertheless, the Court will still assess this issue based on the record.

### A. Common Control

When determining if businesses are under common control, "the [Pension Benefit Guarantee Corporation ('PBGC')] has adopted the language set forth in Section 414(c) of the Internal Revenue Code, which identifies both 'parent-subsidiary' and 'brother-sister' organization groupings as forms of common control." *Cent. States, Se. & Sw. Areas Pension Fund v. SCOFBP, LLC*, 738 F.Supp.2d at 846 (citing 26 C.F.R. § 1.414(c)–2) (hereinafter "*SCOFBP I*"). As noted by the district court in *SCOFBP I*:

> a 'parent-subsidiary group' is one in which one or more 'chains of organizations' are connected through a common controlling interest (80 percent of the stock). A 'brother-sister group' is one in which (1) 'five or fewer persons who are individuals, estates, or trusts' own a controlling interest (at least 80 percent of the stock) in two or more organizations and (2) the same persons maintain 'effective control' (at least 50 percent of the stock) over each organization.

*Id.* (internal citation omitted).

A "combined group" is defined by the Treasury regulations as:

> any group of three or more organizations, if (1) each such organization is a member of either a parent-subsidiary group of trades or businesses under common control or a brother-sister group of trades or businesses under common control, and (2) at least one such organization is the common parent organization of a parent-subsidiary group of trades or businesses under common control and is also a member of a brother-sister group of trades or businesses under common control.

26 C.F.R. § 1.414(c)–2(d).

A "controlling interest" means:

> In the case of an organization which is a corporation, ownership of stock possessing at least 80 percent of total combined voting power of all classes of stock entitled to vote of such corporation or at least 80 percent of the total value of shares of all classes of stock of such corporation.

26 C.F.R. § 1.414(c)–2(b)(2)(A).

After the reorganization of the Hannah Group in 2006 and at the time of the withdrawal in 2009, Donald owned 100% of New Era. New Era was the 99% owner of Hannah Brothers with Donald retaining 1%. HMC was 100% owned by James A. Hannah, Inc., which also was 100% owned by Donald. With these relationships, Plaintiff correctly points out in its papers that under the parent-subsidiary regulation: (i) James A. Hannah, Inc. is the parent of HMC and they are members of the same parent-subsidiary group; and (ii) New Era is the parent of Hannah Brothers and they are members of the same parent-subsidiary group. Under the brother-sister regulation, James A. Hannah Inc. and New Era are members of the same brother-sister controlled group because of the same ownership by Donald. Since Donald had more than 80%

ownership in New Era and James A. Hannah Inc., HMC, James A. Hannah Inc., New Era and Hannah Brothers were all under common control in 2009 when HMC withdrew from the Fund. For ERISA purposes, this satisfies the first prong in establishing joint and several liability.

### B. Trade or Business

Although § 1301(b)(1) does not define "trade or business," the Seventh Circuit has held that "leasing property to a withdrawing employer itself is categorically a 'trade or business'" pursuant to 29 U.S.C. § 1301(b)(1). *SCOFBP II*, 668 F.3d at 879. With HMC as the withdrawing employer in the instant case, the issue becomes whether Hannah Brothers' "leasing" of tugboats to the Hannah Group (including HMC) aligns with Seventh Circuit precedent.

The Hannah Defendants do not dispute the following facts: (i) that Hannah Brothers only assets were vessels that were used exclusively by HMC under a bareboat charter agreement; and (ii) that Hannah Brothers would receive payments from the Hannah Group to lease tugboats owned by Hannah Brothers. The Hannah Defendants do, however, dispute that a bareboat charter is a lease. When responding to Plaintiff's statement that a bareboat charter is a lease, the Hannah Defendants provide three reasons for why they dispute this fact, yet only one has the proper evidentiary citation as required under Rule 56.1(b)(3)(C). For instance, the Hannah Defendants deny that a bareboat charter is a lease by claiming that "[a] bareboat charter is a net lease with no responsibility to Hannah Brother[s] for any costs or

risks," but do not point the Court to any evidentiary support for why these statements are true. As reason why a bareboat charter is not a lease, the last sentence provides the only proper reference to the record—the Hannah Defendants cite to Piotrowski's deposition where he states that Hannah Brothers did not own a checking account. However, the Court is unaware of how the fact that Hannah Brothers did not own a checking account disclaims a bareboat charter as a lease. Considering that the Hannah Group, Hannah Brothers and HMC were such intertwined companies, it is quite realistic that Hannah Brothers leased tugboats to HMC without having a checking account by using the intercompany journal entries that Stoeckert describes in his deposition. What is clear to the Court is that Stoeckert testified in his deposition that a bareboat charter is "equivalent" of a net lease and that at least in 2002 Hannah Brothers was leasing tugboats to the principal operating entity at that point, HMC. Additionally, the partnership agreement executed in 1952 by James, Donald and Margaret states that the "partnership shall engage in the business of . . . buying, selling, *leasing* and operating tugboats, barges, equipment related thereto, and other marine related equipment . . ." (emphasis added). Since the Hannah Defendants fail to properly controvert whether a bareboat charter is a lease, and the record supports otherwise, this fact is deemed admitted for the purposes of this motion.

This Court acknowledges the Seventh Circuit's rule that passive holding of property does not rise to the level of a trade or business, and that "mere ownership of property (as opposed to activities taken with regard to the property) cannot be

considered in determining whether conduct is regular or continuous. *Cent. States, Se. & Sw. Areas Pension Fund v. Fulkerson*, 238 F. 3d 891, 895-96 (7th Cir. 2001). It is important to note that unlike the defendants in *Fulkerson* who provided expert witness evidence to support the proposition that the leases were investments, the Hannah Defendants provide no evidence that the tugboat leases were merely a passive holding of property besides stating that Hannah Brothers did not own a checking account.

By employing the categorical rule in *SCOFBP II* that the leasing of property to a withdrawing company under the common control of the property owner constitutes a "trade or business" within the meaning of § 1301(b)(1), recently reiterated again by the Seventh Circuit in *Cent. States, Se. & Sw. Areas Pension Fund v. Nagy*, 714 F.3d 545, 551 (7th Cir. 2013) and *Cent. States Se. & Sw. Areas Pension Fund v. Messina Prods, LLC*, 706 F.3d 874, 882 (7th Cir. 2013), this Court finds that the Hannah Defendants' are liable under § 1301(b)(1) for leasing tugboats to HMC while under common control. *See Messina Prods*, 706 F. 3d at 882 ("where the real estate is rented to or used by the withdrawing employer and there is common ownership, it is improbably that the rental activity could be deemed a truly passive investment.").

Distinct from the instant matter, in cases where the defendant did not lease property to a withdrawing company, courts use the test from *Commissioner of Internal Revenue v. Groetzinger*, 480 U.S. 23 (1987) to distinguish trades and businesses from investments. For the sake of thoroughness, if this Court needed to use this test in its analysis, we would find that Hannah Brothers engaged in regular

and continuous activity for the primary purpose of generating income or profit, making them liable for HMC's withdrawal. *See Groetzinger*, 480 U.S. at 35 (holding that a trade or business must be involved in the activity with continuity and regularity and that the primary purpose must be for income or profit).

### C. Donald's Individual Liability

The reasons for Donald's individual liability stem from his 100% ownership of James A. Hannah Inc. (which owned 100% of HMC) and his 100% ownership of New Era at the time of the withdrawal. Also, under Illinois law, all partners are jointly and severally liable for the obligations of the partnership. *Burnham Nationwide, Inc. v. Oracle Am., Inc.*, 11 C 8572, 2012 WL 246463 (N.D. Ill. 2012) (citing 805 ILCS 206/306). Illinois law provides that a person who allows another to hold him out as a partner during a venture is liable for debts incurred in that venture. 805 ILCS 206/308. Although the Hannah Defendants admit in their response to Plaintiff's statement of facts that Hannah Brothers is a general partnership, they deny that Donald and New Era are general partners of Hannah Brothers.[4] As support for one of the two denials, the Hannah Defendants point the Court to review a certain page of Stoeckert's deposition. The Court searched the cited page of Stoeckert's deposition for any testimony that would disprove Plaintiff's assertion that Donald and New Era are general partners of Hannah Brothers. Nevertheless, after careful review, we

---

[4] On two occasions in their response to Plaintiff's statement of facts, the Hannah Defendants deny that Donald and New Era are general partners of Hannah Brothers. One denial provides a citation to the record, the other does not.

continue to remain perplexed as to what Stoeckert said in his deposition that the Hannah Defendants claim would refute the fact that Donald is a general partner of Hannah Brothers. Additionally, when responding to another statement by Plaintiff in its Rule 56.1 statement of facts, the Hannah Defendants make a bare assertion that Donald and New Era are not general partners of Hannah Brothers without any citation to the record as support. We refuse to scour the record (in this case Stoeckert's deposition) or sift through the evidence "pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The fact that Donald and New Era are general partners of Hannah Brothers is therefore deemed admitted. Because the Hannah Defendants fail to cite to specific parts of the record to support or contradict this fact set forth by Plaintiff, they also consequently fail to raise a genuine issue of fact for trial.

The undisputed facts, supported by, amongst other things, the deposition testimony of Piotrowski, establish that Donald is indeed a general partner of Hannah Brothers. He is thus jointly and severally liable for all debts of Hannah Brothers, including its withdrawal liability obligation to Plaintiff.

**IV. Amounts**

On September 14, 2010, Plaintiff filed suit against HMC in a separate case in the Northern District of Illinois and the court entered a default judgment in favor of Plaintiff and against HMC in the aggregate amount of $380,380.38. *See Trustees of the Automobile Mechanics Local No. 701 Union and Industry Pension Fund v.*

*Hannah Maritime Corp.*, 10-CV-3702 (N.D. Ill. Sept. 14, 2010). Under the Pension Benefit Guaranty Corporation, the interest rate has been at 3.25% since 2009. Because time and money have accrued since the judgment was entered in its favor, Plaintiff is now asking for $352,485.00 for withdrawal liability, $35,248.50 in liquidated damages, $50,080.33 for statutory interest at a rate of 3.25% from the date that the withdrawal liability was assessed, and $19,675.03 in attorney's fees and costs, totaling $457,488.86. The Court concludes that this amount is reasonable, and the Hannah Defendants are liable to Plaintiff, jointly and severally.

## CONCLUSION

For the aforementioned reasons, the Court grants Plaintiff's motion for summary judgment against Hannah Brothers and Donald Hannah, as to Count I, on a joint and several liability basis.

_____
Charles P. Kocoras
United States District Judge

Dated: 10/6/2014_____